NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMBOY BANCORPORATION, a New Jersey Corporation, | : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civil Action No. 02-CV-5410 (DMC) |
| JENKENS & GILCHRIST, a Professional Corporation, and THE BANK ADVISORY GROUP, INC., a Texas Corporation, | : : : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon a motion for summary judgment filed by Jenkens & Gilchrist ("Defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure on the attorney malpractice claims filed by Amboy Bancorporation ("Plaintiff"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is **denied**.

### I. BACKGROUND

#### A. The Merger

      Plaintiff is a New Jersey Corporation, formed in 1984 with the purpose of serving as a bank holding company that conducted business through Amboy National Bank, its only subsidiary. (Defendant's Brief in Support of its Motion for Summary Judgement ("Def. Br.") at

-1-

3).  Originally, Plaintiff had one class of stock with 420 shareholders.  (Id.)  Soon, Plaintiff began accumulating capital at a much faster rate than the growth of its assets due to the success of the company and the high amount of profits it was making.  (Id.)  In 1996, Congress passed legislation allowing bank holding companies and their national bank subsidiaries to become Subchapter S ("SS") corporations.  (Id.)  Among other benefits, the new legislation meant SS corporations were no longer taxed at the corporate level on dividends distributed to their shareholders.  (Id. at 4).  Plaintiff wished to become a SS corporation because it looked like a solution to its current capital problem.  (Id.)

In order to qualify as a SS corporation Plaintiff had to make structural changes.  To qualify for SS status and receive the tax benefits, a corporation could not consist of more than seventy-five qualified shareholders.  At that time, Plaintiff had 420 shareholders.  (Id. at 4-5). During the time Plaintiff began exploring this option, Plaintiff's chairman attended a conference where one of Defendant's partners spoke on a new area of the law that allowed banks to become SS corporations.  (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br.") at 3).  Defendant, a Texas law firm, held itself out as having expertise in the area of reorganizing under SS.  (Id. at 4).  The president of Co-Defendant, the Bank Advisory Group, Incorporated ("BAG"), also spoke at the conference on the issue of bank valuations.  (Id. at 3-4). After this conference, Plaintiff reached out to both Defendants and retained them based on their knowledge in these areas to aid in their transition to a SS corporation by performing a holding company merger to reduce the number of shareholders to be in compliance with the statutory requirement. (Def. Br. at 5).

In the agreement between Plaintiff and Jenkins & Gilchrist ("JG"), Defendant  agreed to

-2-

perform the following tasks: (1) evaluate shareholders' eligibility; (2) advise Plaintiff's Board of Directors on the possible fiduciary duty issues associated with the proposed holding company merger; (3) prepare and process the required applications associated with the proposed holding company merger; and (4) prepare the Proxy Statement in connection with the merger that Plaintiff's shareholders would all receive. (Pl. Br. at 5). Co-Defendant BAG was also retained to assist with the merger. (Id.)  BAG completed a valuation of Plaintiff's stock and determined that the "cash fair market value" of Plaintiff's stock was $69.50 per share. (Id.).  Using this information, Plaintiff's Directors approved the price of $73 per share to be paid to its shareholders in connection with the SS reorganization. (Id. at 6).  Defendant JG used this value to prepare the Proxy Statement once Plaintiff's Board of Directors voted to approve the merger where all shareholders with less than 15,000 shares of Plaintiff's common stock would receive cash in exchange for their shares (Def. Br. at 6).   This merger would reduce the amount of shareholders so Plaintiff could qualify for SS status. (Id.)  The merger occurred on December 2, 1997, and shareholders with less than 15,000 shares received their checks on or about January 7, 1998, with the phrase, "FULL AND FINAL PAYMENT @ $73.00 PER SHARE TO HOLDERS OF RECORD 12/2/97," printed on each check. (Id. at 8).  All but six of the shareholders accepted the check. (Id. at 9).

### B. Litigation Against Plaintiff

Two shareholders filed a Complaint against Plaintiff and individual members of its Board of Directors on December 5, 1997, in the Superior Court of New Jersey, Chancery Division, Union County, requesting a temporary restraining order that would prevent Plaintiffs from moving forward with the merger. (Def. Br. at 8).  The Court denied this application and two

other law suits were filed that were eventually consolidated for trial in Union County, under the caption Casey v. Brennan, Docket No. UNN-C-180-97.  (Id.)  Defendant JG represented Plaintiff as lead counsel in the underlying litigation until December 7, 1998.  (Pl. Br. at 10).  The trial court issued its first decision in Casey I, on April 26, 1999, where it found that Amboy's offer of $73 per share did not represent "fair value" for the shares and entered judgment for all plaintiffs, excluding those shareholders who had already cashed out, in the amount of $90 per share.  (Def. Br. at 9).  Both sides appealed and the Appellate Division affirmed in part and reversed in part on August 1, 2001, and remanded the matter to the trial court.

On remand the trial court found the fair value of Plaintiff's shares to be $100 and Plaintiff paid this judgment.  (Pl. Br. at 14).  Another appeal followed and the Appellate Division again reversed in part and remanded for further proceedings to the trial court.  (Def. Br. at 9).  The trial court issued Casey III on July 16, 2004, where it held that the fair value of Amboy stock was $114 per share.  Plaintiff has appealed that decision and is currently waiting for the Appellate Division to issue its decision.

While this litigation was moving forward in state court, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, against Defendant JG and Co-defendant BAG for professional malpractice in connection with the merger.  (Id. at 10).  Defendant removed this case to this Court on the basis of diversity jurisdiction.  (Id.)  Plaintiff seeks damages from Defendant JG for all amounts exceeding $73 per share, which Plaintiff will ultimately have to pay to its former shareholders as a result of the Casey litigation.  Plaintiff also seeks the interest on those amounts and the award of counsel and expert fees incurred during the

Casey litigation and the fees it has been ordered to pay to plaintiff Hermanos, a plaintiff in the state litigation. Finally, Plaintiff seeks all fees and expenses related to malpractice claims before this Court and the fees it paid to Defendant JG in connection with the merger. Co-Defendant BAG has not joined in Defendant JG's motion for summary judgment.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)

### B. Legal Malpractice Claims

In order to bring a successful claim for legal malpractice in New Jersey a plaintiff must satisfy the following elements: (1) show an attorney-client relationship existed between the

-5-

plaintiff and defendant, giving rise to a duty of care upon the attorney; (2) the attorney breached his or her fiduciary duty to the client; and (3) the attorney's breach was the proximate cause of the client's damages.  Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996). "Malpractice in furnishing legal advice is a function of the specific situation and the known predilections of the client.  An attorney in a counseling situation must advise a client of the risks of the transaction in terms sufficiently clear to enable the client to assess the client's risks." Id. at 413.  In Conklin, the New Jersey Supreme Court elaborated on the issue of "proximate cause" in malpractice cases where inadequate or inaccurate legal advice is alleged to be a concurrent cause of harm and determined "concepts of causation for failure to act are expressed in terms of whether the negligent conduct may be considered a substantial factor" contributing to the client's loss. Id. at 419.  The substantial factor test does not require a plaintiff to show an "unsevered" connection between the attorney's alleged negligent conduct and the harm suffered by the plaintiff. Id. at 420.  Therefore, in order for a court to find a defendant liable for legal malpractice, his or her negligence must be a substantial factor that contributed to a plaintiff's damages.

### C. The Existence of a Fiduciary Relationship between Plaintiff and Defendant

Here, Plaintiff satisfies the first element because Defendant owed a fiduciary duty to Plaintiff.  Plaintiff spoke with Defendant concerning its desire to become an SS corporation and Defendant held itself out as having expertise in that area.  Plaintiff paid Defendant to advise and aid its endeavor to become a SS corporation.  Therefore, an attorney-client relationship existed between Plaintiff and Defendant and Defendant owed Plaintiff a fiduciary duty.

### D. Remaining Elements

Issues of material fact exist regarding whether Defendant breached its duty to Plaintiff and whether this breach was a substantial factor in Plaintiff's damages.  Therefore, Defendant's motion for summary judgment is denied.

### III. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment is **denied**.  An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:       January 11, 2006  
Original:   Clerk's Office  
Cc:         All Counsel of Record  
            The Honorable Mark Falk, U.S.M.J.  
            File