McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
Tel:  (973) 993-8100
Fax: (973) 425-0161
Attorneys for Defendant
Jenkens & Gilchrist,
A Professional Corporation

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMBOY BANCORPORATION, a New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JENKENS & GILCHRIST, a Professional Corporation; and THE BANK ADVISORY GROUP, INC., a Texas Corporation,<br><br>Defendants. | Civil Action No. 02-5410 (DMC)<br><br>Hon. Dennis M. Cavanaugh, U.S.D.J. |

### JENKENS & GILCHRIST'S L. CIV. R. 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS IN SUPPORT OF ITS RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 56.1, Defendant, Jenkens & Gilchrist ("J&G"), hereby submits the following statement of material facts as to which no genuine issue exists in support of its renewed motion for partial summary judgment. This statement supplements the Stipulation of Facts as set forth in the Final Pretrial Order.

1. The appellate court in <u>Casey v. Brennan</u> held that the use by plaintiff, Amboy Bancorporation ("Amboy"), of minority and marketability discounts in the context of valuing the shares of its former shareholders was improper and concluded that all of those shareholders were entitled to the payment of fair value for their stock – regardless of whether they qualified as statutory dissenters under <u>N.J.S.A.</u> 14A:11-1 <u>et seq.</u>, voted for the transaction, or cashed the checks issued by Amboy at $73 per share. <u>Casey v. Brennan</u>, 344 N.J. Super. 83, 120-21 (App. Div. 2001), <u>certif. denied</u> and <u>certif. granted</u>, 170 N.J. 389 (2001), <u>aff'd</u>, 173 N.J. 177 (2002).

2. On final remand the trial court determined that the fair value of a share of Amboy stock as of the applicable valuation date was $114 per share. Final Pretrial Order, Stipulation of Facts, at ¶ 25. That number increased the compensation due each squeezed-out shareholder by $41 per share resulting in Amboy having to pay an additional $25,653,618 plus interest for the 625,698 shares of stock it reacquired in the squeeze-out merger. <u>Id.</u> at ¶¶ 22, 25.

3. Prior to the issuance of expert reports in this case J&G moved for summary judgment seeking the dismissal of Amboy's damage claim for these amounts. The basis for J&G's motion was that the additional compensation paid for the stock is not a proper measure of damages because Amboy paid no more for the stock than what it was actually worth. The Court denied the motion without prejudice. In thereafter denying J&G's motion for reconsideration the Court stated that this issue could be addressed at the appropriate time by way of an in limine application on damages. James G. Gardner Declaration, Exhibit A, Transcript of Motion Proceedings, March 20, 2006, at 26-20 to 26-24. Mr. Gardner's Declaration is being submitted in support of this motion. All references to exhibits shall refer to those attached to the Gardner Declaration.

4. Subsequently Amboy served the reports of its experts, Steve Thel and Stephen Knee. Only Professor Thel's report purports to articulate a theory of damages. Exhibit B, Thel Report, at pp. 13-16. Professor Thel's only attempt to provide a measure of the alleged damages (other than attorneys' fees and litigation costs) is by asserting that Amboy is entitled to receive from J&G the amount of its underpayment of fair value. Id. He contends that the measure of damages is the difference between the $73 per share offered by Amboy to its shareholders and the amount the court determined to be fair, $114.00 per share. Id. at p. 16. As his report and deposition testimony make clear, however, his opinion that those amounts constitute damages is based on his interpretation of New Jersey law. Id. at pp. 13-16; Exhibit C, Thel deposition at 87-6 to 87-18.

5. In his expert report, Professor Thel opines that Amboy's squeezed-out shareholders prevailed because Amboy's directors had failed in their duty to fully disclose all material facts in the proxy statement and not because the price offered was insufficient and thus unfair. Exhibit B, Thel Report, at p. 14. He also contends that if the proxy statement had been complete and accurate the cashed-out shareholders who had voted for the merger and/or had cashed the checks issued to them at $73 per share would have been equitably estopped from challenging the fairness of the merger. Id. at p. 15. He offers the following theory of how Amboy was thereby damaged:

> The plaintiffs in the shareholder litigation who were not statutory dissenters prevailed because, and only because, the Proxy Statement was false and incomplete. If the Proxy Statement had accurately described the fairness opinion, shareholders who voted for the merger and shareholders who voted against the merger but cashed their checks would not have been entitled to relief. I understand that the Bancorporation has already had to pay these shareholders an additional $27 per share beyond the $73 per share provided in the merger agreement, or a total of over $21,000,000 (including interest). The great bulk of further damages that it may

> have to pay in the future will also be payable to these shareholders, and I understand that they may be entitled to an additional $14 per share, or a total of $8,750,000 plus interest. All of these expenses were suffered only because the Proxy Statement was inaccurate, and thus constitute part of the Bancorporation's damages.

Id. at p. 16.

6. Professor Thel confirmed in his deposition that this opinion was based on his understanding of the law, specifically the law of the State of New Jersey. Exhibit C, Thel deposition at 87-6 to 87-18. Professor Thel stated that he had done his best to find support in New Jersey or Delaware for the proposition that a cashed-out shareholder is always entitled to fair value for his stock, but that there was no support for that proposition. Id. at 89-24 to 90-6. According to Thel his review of the law included the Appellate Division's decision in Casey v. Brennan. Id. at 90-7 to 90-23.

7. In response to a hypothetical question Professor Thel testified that if the proxy statement had disclosed everything and the merger had still been approved at $73 per share the shareholders would not have been able to recover fair value for their shares:

> Q: If they vote no, but they don't have sufficient votes to prevent the transaction from going forward, what recourse do they have at that point?
>
> A: They have the recourse to try to figure a cause of action and there is none there.
>
> Q: And in your view, then, they are stuck with $73 a share. Is that right?
>
> A: That's what the law is, yes.

Id. at 93-14 to 93-22.

8. Professor Thel did not know whether the shareholders who would survive the squeeze-out had enough votes going into the shareholder meeting to get the transaction approved without the support of the other shareholders. Id. at 94-13 to 94-18. However, they did, as at the

time of the shareholder vote there were 3,166,008 shares of Amboy common stock issued and outstanding. Exhibit D, Summary section of Proxy Statement, at p. 3. Amboy repurchased 625,698 shares in the squeeze-out merger, meaning the surviving shareholders owned in excess of 2,500,000 shares of Amboy common stock, and therefore, held a 4-to-1 voting advantage over the minority shareholders who stood to be squeezed out. Final Pretrial Order, Stipulation of Facts, at ¶22. Amboy's by-laws required no more than a two-thirds (2/3) majority of the votes cast at the shareholder meeting to approve the transaction. Exhibit D, Summary at p. 3. Consequently, the result was a foregone conclusion.

        Respectfully submitted,

        McELROY, DEUTSCH, MULVANEY &
        CARPENTER, LLP
        Attorneys for Defendant
        Jenkens & Gilchrist,
        A Professional Corporation

        By: /s/ James G. Gardner
        JAMES G. GARDNER

Dated: April 11, 2008

OF COUNSEL:

George C. Jones, Esq.
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991

1071154-1          5